■ GARRISON SPECIAL OPPORTUNITIES FUND LP et al., Appellants, v FIDELITY NATIONAL CARD SERVICES, INC., Respondent. [15 NYS3d 7]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered November 22, 2013, which denied plaintiffs' motion for partial summary judgment, and granted defendant's cross motion for partial summary judgment dismissing plaintiffs' conversion claim, unanimously affirmed, with costs.

Defendant Fidelity National Card Services, Inc. (Fidelity), provides banking and payment processing services for credit card companies. In 2004, defendant and nonparty Credit Management Group, LLC (CMG) entered into a series of related agreements to provide processing services for a Visa credit card program. By agreement dated December 17, 2004 (the processing agreement), defendant and CMG agreed, among other things, that defendant would receive and process payments from the program cardholders in exchange for monthly fees. Before remitting the balance to CMG, defendant had the right to deduct from the cardholder payments any fees that

CMG owed defendant. The processing agreement was governed by Florida law.

In 2007, defendant and CMG entered into an Electronic Bill Payment/Bill Presentment Agreement (the presentment agreement), also governed by Florida Law. The presentment agreement contained language requiring that fees be settled each banking day; this language is nearly identical to the language in the processing agreement. Also in 2007, defendant and CMG entered into a Master Services Agreement, effective December 17, 2007, under which Fidelity would perform additional functions with respect to the credit card accounts, in exchange for additional fees (the services agreement).

In February 2008, plaintiffs extended about $15 million in financing to CMG's subsidiary, Credit Management Group-Two, LLC (CMG-Two) for its acquisition of the credit card program from CMG (the financing transaction). To effectuate the financing transaction, a credit agreement, dated February 8, 2008 (the 2008 credit agreement), was entered into among plaintiffs, as lender/agent; CMG-Two, as borrower; and CMG, as servicer. The 2008 credit agreement provided for the payment of servicing and other fees to defendant and contained a "waterfall" provision listing the priority for the monthly distribution of the net collections for the prior monthly period. Specifically, after paying monthly fees to Visa, CMG-Two was to distribute funds to CMG for the payment of "[c]ard [p]rocessing [f]ees, [s]ervicing [f]ees, and subservicing fees" before paying plaintiffs. The "Card Processing Fee" is defined in the 2008 credit agreement as the fee payable to defendant under the processing agreement.

CMG-Two agreed to pay defendant's servicing and processing fees even though defendant was not a party to the agreements. CMG-Two also granted plaintiffs a security interest in the program receivables. In May 2008, defendant orally agreed with CMG to defer the collection of its fees due under the services agreement and the processing agreement for 90 days. They thereafter, extended the deferral indefinitely.

By September 2008, CMG owed defendant more than $1.5 million in fees under the processing agreement and more than $2.8 million under the services agreement. CMG had also failed to fund the account from which defendant was entitled to withdraw its fees. Defendant informed CMG that it was in breach of the agreements and thereafter defendant exercised its set-off and recoupment rights under the agreements by withholding incoming cardholder payments, eventually totaling $828,723.88.

Plaintiffs sued and obtained a default judgment against CMG and CMG-Two for the full amount outstanding under the 2008 credit agreement, foreclosed on the collateral and, at a public sale on October 27, 2008, became the owner of the collateral, including the program receivables.

Plaintiffs then sued defendant for conversion based on plaintiffs' alleged right of possession of the funds contained in CMG's account and defendant's alleged improper removal of $828,723.88 from the account. Plaintiffs moved for partial summary judgment on their conversion claim, and defendant cross-moved for partial summary judgment to dismiss the same claim. The motion court denied plaintiffs' motion and granted defendant's motion, and we now affirm.

Florida law applies to the conversion claim because the payment processing agreements between defendant and non-party CMG contain Florida choice of law provisions, the funds at issue are located in Florida, and some of the cardholder payments at issue were held in a Florida lockbox account (see *K.T. v Dash*, 37 AD3d 107, 111 [1st Dept 2006]). Thus, Florida has the greater interest in this dispute.

Defendant had express set-off and recoupment rights under its agreements with CMG that permitted defendant to deduct its own fees from the cardholder payments it received on CMG's behalf before remitting the balance to CMG. The record indicates that defendant did not waive its rights to collect these processing fees; rather, it agreed with CMG to defer payment. Thus, under UCC 9-404 (a), codified in Florida Statutes § 679.4041, upon entering into the financing transaction under which plaintiff financed CMG's subsidiary's acquisition of the credit card program, plaintiffs' interest in the credit card receivables is subject to defendant's contractual set-off and recoupment rights.

UCC 9-404 (a), codified in Florida as Florida Statutes § 679.4041, provides: "Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee are subject to:

"(1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and

"(2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee."

Thus, defendant is "an account debtor" whose contractual

set-off rights have priority, and plaintiffs' secured interests are subject to defendant's preexisting contractual rights. CMG's interest in the receivables was subject to defendant's contractual rights, and assignees, such as plaintiffs, cannot acquire property rights greater than those possessed by the assignors CMG and CMG-Two (*see Foster v Foster*, 703 So 2d 1107, 1109 [Fla Dist Ct App 1997]; *Prestress Erectors, Inc. v James Talcott, Inc.*, 213 So 2d 296, 298 [Fla Dist Ct App 1968], *cert denied* 219 So 2d 702 [Fla 1968]; *see also Matter of International Ribbon Mills [Arjan Ribbons]*, 36 NY2d 121, 126 [1975]). Concur— Sweeny, J.P., Renwick, Andrias, Moskowitz and Gische, JJ.